**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JOE J. HUFFMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-10-1139-HE |
| | ) | |
| UNITED FINANCIAL CASUALTY COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Joe Huffman filed this suit alleging defendant United Financial Casualty Company ("United Financial") breached its duty of good faith and fair dealing in its handling of plaintiff's uninsured motorist claim. United Financial has moved for summary judgment [Doc. #32]. The court concludes plaintiff has not presented evidence sufficient to create a justiciable issue as to whether defendant breached its duty of good faith and fair dealing and that defendant's motion must therefore be granted.

**I. Summary Judgment Standard**

Summary judgment is appropriate only when the moving party demonstrates that no genuine dispute of material fact exists and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party who bears the burden of proof at trial on a claim or defense must be able to point to sufficient evidence to support each essential element of the claim or defense in order to avoid summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c)(1)(B). All inferences from the evidence are to be viewed in the light most favorable to the non-moving party. Mountain Highlands, LLC v. Hendricks, 616

F.3d 1167, 1169-70 (10th Cir. 2010).

The court's application of this standard has been considerably complicated by plaintiff's failure to follow the local rules relating to summary judgment motions. That rule requires the moving party to begin its brief with a concise statement of material facts which the movant asserts to be undisputed. The facts are to be numbered and are to refer with particularity to the portions of the record supporting them. L.Cv.R. 56.1(b). L.Cv.R. 56.1(c) then states what the response brief shall include:

> The brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant's facts that is disputed. All material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party.

The purpose of this portion of the rule is to make it clear to the court and parties which facts the responding party believes to be disputed and the basis for the dispute. Here, plaintiff's brief identifies various numbered paragraphs which he does not dispute. But that is where plaintiff's compliance ends. Rather than identifying the basis for his dispute as to any of the remaining dozens of facts, plaintiff's brief instead includes a section entitled "Statement of Material Facts Supporting Bad Faith and Disputing Defendant's Claimed Undisputed Facts." That section contains 110 numbered paragraphs spanning almost twenty pages. These paragraphs contain both factual assertions and legal arguments, often expressed in terms that make it difficult to figure out which is which. The brief repeatedly denies facts

which are not, as a <u>factual</u> matter, truly disputed, but argues they are disputed because they don't fit plaintiff's theory of the case. More importantly, the brief does not refer to the particular "facts" identified by defendant (apart from those explicitly admitted), so the court is left largely to its own devices in trying to determine which assertions plaintiff is trying to controvert and the evidentiary basis for same. Given this level of non-compliance and the nature of the disputed (or not) facts in issue, summary judgment would be warranted for defendant based on that circumstance alone. However, the court has attempted to sort through the factual and other issues and concludes summary judgment is warranted for defendant even if plaintiff's noncompliance with the local rule is ignored.

## II.  The Tort of Bad Faith

Plaintiff's claim in this case is solely one for tortious breach of the duty of good faith and fair dealing. In <u>Christian v. American Home Assurance Co.</u>, the Oklahoma Supreme Court held that an insurer's breach of its implied duty to deal fairly and act in good faith with its insured gives rise to an action in tort. 577 P.2d 899, 904 (Okla.1978). Thus, an insurer who unreasonably and in bad faith withholds payment of a covered claim upon proper proof of loss is liable for the damages its insured suffers as a result. *See id.* at 903-04. It is not bad faith, however, for an insurer to resort to a judicial forum to resolve a legitimate dispute. <u>Ball v. Wilshire Ins. Co.</u>, 221 P.3d 717, 725 (Okla. 2009). "The critical question in a bad faith tort claim is whether the insurer had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding or delaying payment under the policy." *Id.* (citations omitted). At summary judgment, the court acts as a gatekeeper to

determine whether the insurer's conduct, when viewing the facts in the light most favorable to the insured, "may be reasonably perceived as tortious" as a matter of law. Garnett v. Gov't Employees Ins. Co., 186 P.3d 935, 944 (Okla. 2008).  The level of culpability required to support liability for this tort is more than simple negligence by the insurer but less than recklessness. Badillo v. Mid Century Ins. Co., 121 P.3d 1080, 1094 (Okla. 2005).  Here, the court concludes the evidence, even taken in the light most favorable to plaintiff, does not show more than, at most, simple negligence.

It appears the following facts are undisputed.  On August 8, 2008, plaintiff, an Oklahoma resident, was driving his automobile in Duluth, Minnesota, when he was rear-ended by a non-party (Ms. Connor) as plaintiff was entering a construction zone on Interstate 35.  It appears the collision caused approximately $2,000 in damage to Huffman's vehicle, some injury to plaintiff personally, and was solely the fault of Connor.  At the time of the accident, plaintiff carried $100,000 per person in uninsured/underinsured motorist ("UM") coverage under an Oklahoma commercial auto insurance policy issued by United Financial. Connor was insured by American Family Mutual Insurance Company ("American Family") under a Minnesota auto insurance policy with $100,000 per person in bodily injury liability coverage.

Within a few days of the accident, plaintiff hired counsel.  That counsel eventually contacted defendant by letter, advising that a UM claim by plaintiff was possible but that

plaintiff's status had not been determined.[1]  Further exchanges between plaintiff's counsel and defendant occurred over the succeeding months, eventually including what appears to have been a *pro forma* demand by counsel for payment of policy limits.  Defendant assigned various claims personnel in both Minnesota and Oklahoma to deal with plaintiff's claim, with different personnel being assigned to different aspects of the claim.   In early 2010, plaintiff entered into a settlement agreement with Ms. Connor releasing her from further liability.

The claims discussions and settlement took place against the backdrop of differing liability schemes under Oklahoma and Minnesota law.  Minnesota has enacted the No-Fault Automobile Insurance Act, Minn. Stat. §§ 65B.41 - 65B.71.  Under Minnesota's "modified" no-fault scheme, the claimant's insurer must pay at least the first $20,000 in medical expenses and the first $20,000 in non-medical economic losses (e.g. lost wages), regardless of who is at-fault, with certain statutory exceptions.  The tortfeasor is liable for all damages not covered by no-fault benefits.  *See generally id.*; Do v. Am. Family Mut. Ins. Co., 779 N.W.2d 853, 856-57 (Minn. 2010).  Further, a claimant such as plaintiff is entitled to no-fault benefits under Minnesota law—even though the claimant's policy did not provide for them—if the claimant's insurer was licensed to write insurance in Minnesota and the claimant's vehicle was physically present there.  Minn. Stat. § 65B.50; W. Nat'l Mut. Ins. Co. v. State Farm Ins. Co., 374 N.W.2d 441, 445 (Minn. 1985).

The court concludes it is unnecessary to undertake a more detailed recitation here of

---

[1]*Plaintiff's effort to characterize this contact as the assertion of a UM claim misstates the plain import of the letter.*

the specific demands and responses or other actions involved in the handling of this claim. The undisputed facts make it clear that the circumstances involved a relatively complex claim submission involving allocations of liability between two insurers where liability and insurance coverage were driven by the laws of two different states with dissimilar liability systems. Unsurprisingly, neither plaintiff's counsel nor any single representative of defendant (or of the other insurer) appears to have had a clear or certain understanding of how the two state's systems would mesh in this particular case. Plaintiff's settlement with the tortfeasor and the lack of a common understanding of what was resolved by that settlement created additional uncertainty.

In short, plaintiff's evidence, even viewed in the light most favorable to him, falls short of supporting an inference that the circumstances involved more than a legitimate dispute over coverage.[2] The actions or positions of defendant's representatives may have been incorrect in certain respects, but there is nothing in the proffered evidence to support an inference of more than simple negligence. There is no evidence that United Financial acted tortiously or in bad faith.

### III. Conclusion

---

[2] *Among other things, plaintiff argues that Ms. Connor and her insurer were entitled to "statutory immunity" under Minnesota law for the first $40,000 in economic damages and, therefore, plaintiff's medical bills were "uninsured" within the definition of his policy. While there is evidence that plaintiff and his counsel believed Ms. Connor and her insurer were "statutorily immune" from such liability, there is nothing to suggest that the defendant did anything to cause this belief or that American Family actually denied coverage for any amount of damages plaintiff suffered. The fact that an American Family insurance adjuster thought he was only settling the non-economic damage portion of the claim does not evince a denial of coverage.*

For the reasons stated, defendant's motion for summary judgment [Doc. #32] is **GRANTED.** As the motion disposes of all claims, a separate judgment will be entered contemporaneously with this order. *See* Fed. R. Civ. P. 58(a).

**IT IS SO ORDERED**.

Dated this 18th day of January, 2012.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE